Approved: _____
ANDREW K. CHAN
Assistant United States Attorney

Before: HONORABLE GABRIEL W. GORENSTEIN
United States Magistrate Judge
Southern District of New York

------------------------------- x

UNITED STATES OF AMERICA          :   **SEALED COMPLAINT**

                                  :   Violation of
        - v. -                    :   18 U.S.C. §§ 371, 545,
                                      1028, 1028A, 1544, 2342, and
LIN FEI ZHANG, and                :   2.
JING DONG,
                                  :   COUNTY OF OFFENSE:
        Defendants.                   NEW YORK
                                  :

------------------------------- x

SOUTHERN DISTRICT OF NEW YORK, ss.:

17 MAG 9495

J.W. GALVIN III, being duly sworn, deposes and says that he is a Postal Inspector with the United States Postal Inspection Service ("USPIS"), and charges as follows:

COUNT ONE
(Conspiracy to Traffic in Contraband Cigarettes and Smuggle Cigarettes)

1. From at least in or about October 2015 up to and including at least in or about December 2017, in the Southern District of New York and elsewhere, LIN FEI ZHANG and JING DONG, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, to violate Title 18, United States Code, Sections 545 and 2342.

2. It was a part and an object of the conspiracy that LIN FEI ZHANG and JING DONG, the defendants, and others known and unknown, did knowingly ship, transport, receive, possess, sell, distribute, and purchase contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341, to wit, a quantity of more than 10,000 cigarettes, which

bore no evidence of the payment of applicable State cigarette taxes in the State of New York.

3. It was further a part and an object of the conspiracy that LIN FEI ZHANG and JING DONG, the defendants, and others known and unknown, did smuggle and clandestinely introduce into the United States merchandise which should have been invoiced, to wit, approximately 300,000 packs of cigarettes with an approximate value of $2.4 million.

OVERT ACT

4. In furtherance of said conspiracy and to effect its illegal object, the following overt act, among others, was committed in the Southern District of New York and elsewhere:

a. On or about May 26, 2016, LIN FEI ZHANG and JING DONG, the defendants, picked up approximately 19 parcels from a post office located at 50 Canal Street, New York, NY 10013.

(Title 18, United States Code, Section 371.)

COUNT TWO
(Trafficking in Contraband Cigarettes)

5. From at least in or about October 2015 up to and including at least in or about December 2017, in the Southern District of New York and elsewhere, LIN FEI ZHANG and JING DONG, the defendants, did knowingly ship, transport, receive, possess, sell, distribute, and purchase contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341, to wit, a quantity of more than 10,000 cigarettes, which bore no evidence of the payment of applicable State cigarette taxes in the State of New York.

(Title 18, United States Code, Sections 2342 and 2.)

COUNT THREE
(Smuggling Goods into the United States)

6. From at least in or about October 2015 up to and including at least in or about December 2017, in the Southern District of New York and elsewhere, LIN FEI ZHANG and JING DONG, the defendants, willfully and knowingly and with intent to defraud the United States, did smuggle and clandestinely introduce into the United States merchandise which should have

been invoiced, to wit, approximately 300,000 packs of cigarettes with an approximate value of $2.4 million.

(Title 18, United States Code, Sections 545 and 2.)

## COUNT FOUR
(Identity Theft)

7. From at least in or about October 2015 up to and including at least in or about December 2017, in the Southern District of New York and elsewhere, LIN FEI ZHANG and JING DONG, the defendants, willfully and knowingly would and did transfer, possess, and use, without lawful authority, in and affecting interstate and foreign commerce, a means of identification of another person with the intent to commit, and to aid and abet, and in connection with, an unlawful activity that constitutes a violation of federal law, to wit, conspiracy to traffic in contraband cigarettes and smuggle cigarettes, in violation of Title 18, United States Code, Section 371, as charged in Count One of this Complaint, and as a result of the offense, obtained something of value aggregating $1,000 and more during any 1-year period.

(Title 18, United States Code, Sections 1028(a)(7), (b)(1)(D), and 2.)

## COUNT FIVE
(Misuse of Passports)

8. From at least in or about October 2015 up to and including at least in or about December 2017, in the Southern District of New York and elsewhere, LIN FEI ZHANG and JING DONG, the defendants, willfully and knowingly used and attempted to use Chinese passports, which passports had been issued and designed for the use of another person, to wit ZHANG and DONG used, attempted to use, and aided and abetted the use of, Chinese passports in the names of co-conspirators not named herein ("CC-2," "CC-4," and "CC-5"), to open PO boxes at post offices and commercial mail receiving agencies for the purpose of receiving contraband cigarettes.

(Title 18, United States Code, Sections 1544 and 2.)

COUNT SIX
(Aggravated Identity Theft)

9.      From at least in or about October 2015 up to and including at least in or about December 2017, in the Southern District of New York and elsewhere, LIN FEI ZHANG and JING DONG, the defendants, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, ZHANG and DONG used and aided and abetted the use of passports and passport numbers of other individuals in connection with the offense charged in Count Five of this Complaint, knowing that these means of identification belonged to other people.

(Title 18, United States Code, Sections 1028A(a)(1),
(b)(2), and 2.)

10.     I have been a Postal Inspector with USPIS since 2013.  During my tenure with the USPIS, I have participated in numerous investigations involving trafficking of contraband and, among other things, have conducted or participated in surveillances, debriefings of informants, and reviews of taped conversations and records, and the execution of search and tracking warrants.  From these experiences, and from training relating to trafficking of cigarettes, I have become familiar with the ways in which cigarette traffickers conduct their business.

11.     The bases for my knowledge and the foregoing charges are, in part, as follows:

BACKGROUND AND SUMMARY OF THE SCHEME

12.     Based on my training and experience, I know that pursuant to international postal agreements, all shippers are required to provide a shipping label with a customs declaration (the "Customs Declaration") for any package that is shipped internationally so that the customs agencies of each respective country can collect duties and enforce import/export regulations.  The Customs Declaration requires the shipper to provide, among other things, a description of the contents of a shipment and their value.  When packages from overseas countries arrive in the United States, they are inspected at a customhouse operated by the United States Customs and Border Protection ("CBP") before entering the custody of the United States Postal Service ("USPS") for delivery.  Because tobacco products may

4

generally not be delivered through the mails, see 18 U.S.C. § 1716E, CBP is required to seize or return to sender any packages that contain cigarettes.

13. Since 2015, I and other law enforcement agents have been investigating a cigarette smuggling organization ("CSO") that smuggles large quantities of cigarettes into the United States by shipping parcels from China, South Korea, or Vietnam to United States Post Office boxes ("PO Boxes") and commercial mail receiving agencies ("CMRAs")[1] in Manhattan and Brooklyn. To evade the payment of duties and excise taxes, the parcels are typically labeled as "shoes," "clothes," "presents," or other items that do not have high retail value. The cigarettes are then sold without the payment of federal, state, or local cigarette taxes.

14. Law enforcement has identified LIN FEI ZHANG and JING DONG, the defendants, and others known and unknown, as members of the CSO. Between in or around October 2015 and in or around the Summer of 2016, the USPIS identified PO Boxes registered in the names of ZHANG, DONG, and at least four co-conspirators not named herein ("CC-1," "CC-2," "CC-3," and "CC-4") at the post offices located at 244 East 3rd Street, New York, NY 10009 (the "Tompkins Square Post Office"); 350 Canal Street, New York, NY 10013 (the "Canal Street Post Office"); 8320 13th Avenue, Brooklyn, NY 11228 (the "Dyker Heights Post Office"); 615 Clinton Street, Brooklyn, NY 11231 (the "Red Hook Post Office"); 419 McDonald Avenue, Brooklyn, NY 11218 (the "Kensington Post Office"); 292 9th Street, Brooklyn, NY 11215 (the "Van Brunt Post Office"); and 900 3rd Avenue, Brooklyn, NY 11232 (the "Bush Terminal Post Office").

15. In or around February 2017, the USPIS closed a PO Box registered in the names of CC-3 and CC-4 at the Tompkins Square Post Office. The USPIS also provided to CC-1 a notice stating, in sum and substance, that the transportation of cigarettes through the mails is a violation of federal law.

16. Between in or around February 2017 and December 2017, the USPIS has identified PO Boxes registered in the names of CC-2, CC-3, and CC-4 and a co-conspirator not named herein ("CC-5") at CMRAs located at 495A Henry Street, Brooklyn, NY 11231 (the "Cobble Hill CMRA"); 151 First Avenue, New York, NY 10003 (the "East Village CMRA"); 7624 Thirteenth Avenue,

---

[1] Common examples of CMRAs include the UPS store and Mail Boxes Etc.

Brooklyn, NY 11228 (the "Express Line CMRA"); 319 Lafayette Street, New York, NY 10012 (the "UPS Store-1 CMRA"); 388 Second Avenue, New York, NY 10010 (the "UPS Store-2 CMRA"); and 34 Third Avenue, New York, NY 10003 (the "UPS Store-3 CMRA"). Employees at the CMRAs have reported that LIN FEI ZHANG and JING DONG, the defendants, have picked up parcels containing suspected cigarettes from the CMRAs.

ZHANG and DONG Pick Up Parcels With Cigarettes from Post Offices

17. Based on my conversations with witnesses, other members of law enforcement, and my review of United States Postal Service records, I know the following:

a. Between in or around June 2013 and in or around April 2016, approximately 12 P.O. Boxes were registered in the names of LIN FEI ZHANG and JING DONG, the defendants, and CC-1, CC-2, CC-3, and CC-4 at the Tompkins Square Post Office, Canal Street Post Office, Dyker Heights Post Office, Red Hook Post Office, Kensington Post Office, Van Brunt Post Office, and Bush Terminal Post Office. Individuals are required to present photo identification when registering for a PO Box.

b. On or about October 30, 2015, a post office employee at the Dyker Heights Post Office ("Employee-1") reported that there were numerous parcels (the "Parcels") likely containing cigarettes shipped to PO Boxes registered in the names of ZHANG and DONG. According to Employee-1, the Parcels were typically large cardboard boxes that had been wrapped in a green or yellow plastic material and shipped from China, Vietnam, or Korea. Employee-1 believed that cigarettes were in the Parcels because a previous parcel of the same general appearance that had been shipped to the PO Boxes had been damaged, revealing its contents.

c. Post office employees at the Red Hook Post Office, Kensington Post Office, Van Brunt Post Office, Bush Terminal Post Office, Tompkins Square Post Office, and Canal Street Post Office have also acknowledged receiving the Parcels, which similarly were shipped from China, Vietnam, or Korea to PO Boxes registered in the names of ZHANG, DONG, CC-1, CC-2, CC-3, and CC-4. The employees report that ZHANG, DONG, or CC-1 typically pick up the Parcels, even from the PO Boxes registered in the names of CC-2, CC-3, and CC-4. I have personally seen the Parcels at the Tompkins Square Post Office, Canal Street Post Office, Kensington Post Office, Red Hook Post Office, and Dyker Heights Post Office.

        d.    On or about March 24, 2016, three parcels shipped to PO Boxes registered in the name of ZHANG and CC-1 were seized and opened by law enforcement (the "Seized Parcels"). Each Seized Parcel had been shipped from an address in China and contained approximately 500 packs of cigarettes, which based on my training and experience, I know to be approximately 10,000 cigarettes. As a result, the Seized Parcels contained approximately 30,000 cigarettes total. None of the packs of cigarettes contained evidence of the payment of cigarette taxes in the State of New York.[2] The Customs Declaration on each Seized Parcel stated that the contents of the package were "shoes."

        18.    Based on my conversations with witnesses, other members of law enforcement, and my review of surveillance video and photographs, I know the following:

        a.    On or about November 24, 2015, LIN FEI ZHANG, the defendant, picked up approximately twelve parcels similar to those described above, see supra ¶¶ 17(b)-(d), from the Dyker Heights Post Office.

        b.    On or about December 5, 2015, ZHANG and JING DONG, the defendant, picked up approximately 24 parcels similar to those described above, see supra ¶¶ 17(b)-(d), from the Dyker Heights Post Office.

        c.    On or about January 5, 2016, ZHANG and DONG, the defendant, picked up approximately 15 to 20 parcels similar to those described above, see supra ¶¶ 17(b)-(d), from the Dyker Heights Post Office.

        d.    On or about January 8, 2016, ZHANG and DONG picked up one parcel similar to those described above, see supra ¶¶ 17(b)-(d), and placed it in a minivan (the "Minivan"). The Minivan then exited the Dyker Heights Post Office. Law

---

[2] Based on my training and experience, I know that New York State imposes an excise tax on cigarettes at the rate of $4.35 per pack of twenty cigarettes. New York City imposes a local excise tax at the rate of $1.50 per pack of twenty cigarettes, bringing the combined tax rate in New York City to $5.85. Packs of cigarettes for which the New York State and New York City excise taxes have been paid are affixed with a particular stamp. Only licensed agents may affix cigarette packs with the New York State or New York City stamps.

enforcement began following the Minivan in unmarked vehicles (the "Unmarked Cars"). After driving for several minutes, the Minivan engaged in several sudden turns and maneuvers. Based on my training and experience, it appears that ZHANG and DONG were concerned that they were being followed by law enforcement and attempted to prevent the Unmarked Cars from following the Minivan.

    e. On or about February 19, 2016, CC-1 picked up approximately four parcels similar to those described above, see supra ¶¶ 17(b)-(d), from the Kensington Post Office.

    f. In or around April 2016, ZHANG picked up parcels similar to those described above, see supra ¶¶ 17(b)-(d), from the Dyker Heights Post Office. While picking up the boxes, ZHANG asked a USPS employee whether his parcels were being watched or checked. Based on my involvement in this investigation, I know that on this date, there were approximately 23 parcels similar to those described above, see supra ¶¶ 17(b)-(d), being held at JFK Airport because of suspicion that they contained cigarettes. After this conversation, no more parcels were shipped to the Dyker Heights Post Office. Additionally, ZHANG, DONG, and CC-1 did not return to the Dyker Heights Post Office.

    g. On or about May 7, 2016, ZHANG and CC-1 picked up approximately five parcels similar to those described above, see supra ¶¶ 17(b)-(d), from the Red Hook Post Office.

<u>ZHANG and DONG Make False Statements in an Effort to Pick Up the Parcels from Post Offices</u>

    h. In or around May 2016, ZHANG attempted to pick up parcels similar to those described above, see supra ¶¶ 17(b)-(d), from the Canal Street Post Office that had been shipped to a PO Box registered to ZHANG but that was addressed to CC-2. USPS employees did not allow ZHANG to pick up the parcels because ZHANG's name was not on the package. ZHANG claimed that CC-2 was a relative. USPS employees responded that ZHANG could not pick up packages addressed in the name of CC-2. Later that week, ZHANG and DONG arrived at the Canal Street Post Office to pick up the parcels addressed to CC-2. ZHANG claimed that DONG was CC-2 and presented a Chinese passport in the name of CC-2 (the "CC-2 Passport"). USPS employees responded that the photograph in the CC-2 Passport did not match the appearance of DONG. In total, ZHANG unsuccessfully attempted to pick up parcels addressed to CC-2 approximately five times. On or about

8

May 25, 2016, ZHANG arrived at the Canal Street Post Office with an individual ("Individual-1") claiming to be CC-2 and added CC-2 as an authorized recipient for the P.O. Box registered to ZHANG. A USPS employee ("Employee-2") did not believe that Individual-1's appearance matched the CC-2 Passport Photograph and took a photograph of Individual-1 (the "Individual-1 Photograph"). Additionally, ZHANG and Individual-1 presented an identification card styled as a "United States of America - Photo Identification System" card (the "CC-2 Identification Card"). I have reviewed the photograph of Individual-1 and the CC-2 Passport, and I have concluded that they are not the same individual.

    i. Based on my review of records maintained by the Department of State, I know that no visas for entry into the United States have been issued for the CC-2 Passport. Based on my review of the CC-2 Identification Card and my training and experience, I also know that the CC-2 Identification Card was not issued by the United States government.

    j. Based on my review of USPS records, I know that PO Boxes registered in the name of CC-4 were opened at the Red Hook Post Office and the Tompkins Square Post Office. A Chinese passport in the name of CC-4 (the "CC-4 Passport") was used to open these PO Boxes. Based on my review of records maintained by the Department of State, I know that no visas for entry into the United States have been issued for the CC-4 Passport.

    k. On or about May 26, 2016, ZHANG and DONG picked up approximately 19 parcels similar to those described above, see supra ¶¶ 17(b)-(d), from the Canal Street Post Office that were addressed to CC-2.

    j. On or about February 27, 2017, CC-1 attempted to pick up parcels similar to those described above, see supra ¶¶ 17(b)-(d), from a PO Box at the Tompkins Square Post Office registered in the names of CC-3 and CC-4. CC-1 was provided with a notice stating, in sum and substance, that it was a violation of federal law to use the mails to transport cigarettes and that service to the PO Box registered in the names of CC-3 and CC-4 would be terminated for this reason. CC-1 signed a document acknowledging receipt of the notice.

9

ZHANG and DONG Pick Up Parcels With Cigarettes from CMRAs

19. Based on my conversations with witnesses, other members of law enforcement, and my review of United States Postal Service records, I know the following:

a. Between in or around May 2016 and in or around December 2017, approximately 7 PO Boxes were registered in the names of CC-2, CC-3, CC-4, and CC-5 at the Cobble Hill CMRA, the East Village CMRA, the Express Line CMRA, the UPS Store-1 CMRA, the UPS Store-2 CMRA, and the UPS Store-3 CMRA (collectively, the "CMRAs"). Individuals are required to present photo identification when registering for a PO Box at a CMRA. Employees at the CMRAs report that LIN FEI ZHANG and JING DONG, the defendants, regularly pick up multiple parcels similar to those described above, see supra ¶¶ 17(b)-(d), on a weekly or daily basis. A USPS employee who delivers packages to the UPS Store-3 estimates that approximately 40 parcels similar to those described above, see supra ¶¶ 17(b)-(d), have been delivered to the UPS Store-3 in the month of December 2017. An employee at UPS Store-2 states that ZHANG picks up parcels similar to those described above, see supra ¶¶ 17(b)-(d), almost every day.

b. Unlike the PO Boxes at the USPS post offices described above, the CMRAs do not have any PO Boxes registered in the names of ZHANG, DONG, or CC-1 that are receiving parcels similar to those described above, see supra ¶¶ 17(b)-(d). Rather, the PO Boxes at the CMRAs are registered in the names of CC-2, CC-3, CC-4, or CC-5. Additionally, employees at the CMRAs have not identified CC-2, CC-3, CC-4, or CC-5 as the individuals who pick up the parcels from the CMRAs.

c. PO Boxes at the CMRAs registered in the name of CC-2 have been opened using the CC-2 Passport and the CC-2 Identification Card. PO Boxes at the CMRAs registered in the name of CC-5 have been opened using a Chinese passport in the name of CC-5 (the "CC-5 Passport") and an identification card styled as a "New York State Driver License" that contains an ID number (the "CC-5 Identification Card"). Based on my review of law enforcement databases, it does not appear that the ID number associated with the CC-5 Identification Card is valid. As a result, I believe that the CC-5 Identification Card is forged and invalid.

d. On or about December 15, 2017, law enforcement agents conducting surveillance observed ZHANG drive from Brooklyn to the UPS Store-2 in Manhattan and pick up a

parcel similar to those described above, see supra ¶¶ 17(b)-(d). ZHANG then drove to the UPS Store-3 and picked up picked up three parcels similar to those described above, see supra ¶¶ 17(b)-(d). Law enforcement agents then conducted a traffic stop of ZHANG's vehicle, and ZHANG provided identification in the name of ZHANG.

<u>DONG Notifies Law Enforcement of Cigarette Smuggling By Others</u>

20. Based on my conversations with witnesses, other members of law enforcement, and my review of United States Postal Service records, I know the following:

a. On or about August 24, 2017, I received an email from an email address (the "DONG Email Address") registered to "dong," stating: "I would like to report:there is a large number of smuggled cigarettes received from china every day . . . He also bribed the post office postman driver. He illegally wholesale thousands of illegal cigarettes every day." (the "August 24 Email") The August 24 Email provided a name and address of another individual ("Individual-2"). Based on my review of USPS records, I know that the DONG Email Address was used in an application to open a PO Box at the Red Hook Post Office registered in the name of JING DONG, the defendant.

b. On or about August 25, 2017, I received a fax message providing similar information to the August 24 Email (the "August 25 Fax").[3]

c. On or about September 7, 2017, the New York City Sheriff's Office (which is responsible for collecting and enforcing New York City excise taxes on cigarettes) received a phone call from a phone number (the "DONG Cellphone") providing information similar to the August 24 Email and the August 25 Fax (the "September 1 Phone Call"). Based on my review of USPS records, I know that the DONG Cellphone was used in applications to open PO Boxes at the Cobble Hill CMRA, East Village CMRA, UPS Store-2 CMRA, and the Bush Terminal Post Office. Additionally, based on my review of bank records, I know that the DONG Cellphone was used as a "Home Phone" number on a loan application submitted by DONG.

---

[3] I have previously provided business cards containing my name, email address, and fax number to residents of addresses that were used to open PO Boxes associated with this scheme.

11

d.  Employees at the CMRAs have reported seeing ZHANG and DONG pick up parcels similar to those described above on dates subsequent to the August 24 Email, the August 25 Fax, and the September 1 Phone Call.  As a result, it appears that DONG and ZHANG continue to participate in the CSO even after reporting cigarette smuggling being conducted by others to law enforcement.

The Customs Declarations Contain False Information

21.  Based on my review of United States Postal Service records, I know the following:

a.  Between in or around November 2015 and the present, the USPIS has identified at least approximately 660 parcels that have been shipped to PO Boxes registered in the names of ZHANG, DONG, CC-1, CC-2, CC-3, CC-4, and CC-5.

b.  I have reviewed approximately 420 shipping labels containing the Customs Declarations relating to these shipments, which show shipments coming from China, Vietnam, and Korea.  Of these approximately 420 shipping labels, nearly all of the Customs Declarations declare that the contents of the parcel are something other than cigarettes.  Additionally, the vast majority of the Customs Declarations declare the value of the contents to be between $5 and $95:

| Label | Number (Approximate) |
|---|---|
| "Backpack" | 27 |
| "Bathroom Pendant" | 11 |
| "Clothes" | 22 |
| "Gift" or "Presents" | 58 |
| "Shoes" | 142 |
| "Shower" | 57 |
| "Thermostatic Faucets" | 70 |
| "Trousers" | 18 |
| "Coasters" | 3 |
| "Menus" | 2 |
| "Necessity Cigarette" or "Necessities [Cigarettes]"[4] | 8 |

---

[4] Each of the Customs Declarations associated with these packages marked the contents as "Gift" instead of "Merchandise."

| [Vietnamese Character for Cigarettes] | 1 |
|---|---|
| **TOTAL** | 419 |

WHEREFORE, deponent prays that warrants be issued for the arrest of LIN FEI ZHANG and JING DONG, the defendants, and that they be imprisoned, or bailed, as the case may be.

_____
J.W. GALVIN III
Postal Inspector
United States Postal Inspection Service

Sworn to before me this
26th day of December, 2017

_____
HONORABLE GABRIEL W. GORENSTEIN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK